579 S.E.2d 718

**In re: REBECCA K. C.**

**No. 30599.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 15, 2003.

Decided March 24, 2003.

Judith A. Isner, Esq., Harrisville, for Appellant.

Matthew W. Alexander, Esq., West Union, Guardian Ad Litem.

Darrell V. McGraw, Jr., Attorney General, Rocco Fucillo, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM:

In the instant case, we uphold a decision by the Circuit Court of Ritchie County terminating a mother's parental rights.

### I.

The pertinent facts of the instant case can be presented fairly simply.

On June 30, 2001, the appellant, Susie Pearl K. C., gave birth to a female child, Rebecca K. C.[1] On July 18, 2001, the appellee, the West Virginia Department of Health & Human Resources ("DHHR") filed a peti-tion seeking the termination of the appellant's parental rights.[2]

*W.Va.Code,* 49–6–5b(a)(3)(1998) requires the DHHR to file such a petition (subject to certain exceptions) if there has been a prior involuntary termination of rights to another of a parent's children. In the appellant's case, as we detail further *infra,* her parental rights to three other children were terminated by court order in 2000.

After several hearings, the circuit court determined that Rebecca K.C. was neglected and/or abused; that there was no reasonable likelihood that the appellant, even with assistance, could correct the conditions that led to the finding of neglect and/or abuse; and specifically that granting an improvement period to see if those conditions could be corrected would be pointless. Consequently, on December 27, 2001, the court entered an order terminating the appellant's parental rights with respect to Rebecca K. C.

The appellant appeals this order, arguing first that the circuit court erred in determining that the child was neglected or abused; and second, assuming *arguendo* that this determination was correct, that the court erred in determining not to grant the appellant an improvement period to attempt to correct the conditions that led to the finding of neglect and/or abuse.

Inasmuch as the evidence regarding both of these determinations was basically the same, we shall combine them for purposes of our discussion.

### II.

■ We begin by briefly discussing the applicable standards of review for civil abuse and neglect proceedings. In Syllabus Point 1 of *State ex rel. Virginia M. v. Virgil Eugene S. II,* 197 W.Va. 456, 475 S.E.2d 548 (1996), this Court stated:

> terminate the parental, custodial or guardianship *rights and/or responsibilities* of the abusing parent ...." *W.Va.Code,* 49–6–5(a)(6) [2002] (emphasis added). This statutory language recognizes the constellation of legal obligations, duties, responsibilities, authorities, and powers that make up the parent-child relationship.

---

1. As is our custom in certain sensitive cases, we use initials instead of last names.

2. *W.Va.Code,* 49–6–5 [2002] sets forth a hierarchy of dispositional options that are available to a circuit court upon a finding that a child is neglected or abused. The final option is to "...

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety. Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

We further stated in *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 562, 490 S.E.2d 642, 649 (1997) that:

> The above standard of review requires deference by this Court to the findings of a circuit court in a civil abuse and neglect proceeding. The critical nature of unreviewable intangibles justify the deferential approach we accord findings by a circuit court.

In *In re Emily & Amos B.*, 208 W.Va. 325, 540 S.E.2d 542 (2000), we recognized that "the circuit court is the better-equipped tribunal" to make the substantive determination regarding termination of parental rights. 208 W.Va. at 340, 540 S.E.2d at 557 (rejecting the contention that incarceration should automatically result in termination; holding that incarceration was a factor for the court to consider in exercising its discretion).

### III.

 As previously stated, the appellant's (and her former husband's) parental rights

with respect to their three older children were involuntarily terminated by the Circuit Court of Ritchie County on September 14, 2000—following the filing of a neglect and abuse petition in 1999. In this earlier case, severe adverse conditions for the children were found to exist; the appellant and her then-husband were granted an improvement period, and an extension of that period. However, they did not comply with a family plan that included assistance from social service agencies, and the court ultimately concluded that—even with available assistance—they could not adequately parent their children. The merits of this earlier finding are not challenged in the instant case.

The appellant was born in 1977; she is illiterate and mildly retarded. She has a history of alcohol abuse, unstable and abusive relationships, and sexual victimization. When the child at issue in the instant case was born, the appellant had ended her marriage to the father of her three other children, and she was living at her parents' house.[3] She did not obtain pre-natal medical care until the third trimester of her pregnancy.

The record from the previous neglect and abuse case demonstrated that the appellant has serious limitations in her judgment and her ability to parent, even with assistance.

The appellant testified in the instant case that she and her child intended to live with her parents. At first blush, this testimony might seem to argue that the circuit court should have viewed her ability to parent her fourth child, with their assistance, in a different light; and that the court should have afforded her an improvement period.

However, her living with her parents was in fact not a positive factor for the appellant, in terms of their supporting or enhancing her ability to adequately parent her child. The contrary is true. The children's maternal grandparents were originally named as respondents in the earlier neglect and abuse proceedings. Many of the adverse conditions

---

**3.** The father of the child at issue in the instant case (not the appellant's former husband) was determined, after the termination order in the instant case, to be an individual who is apparent-

ly not asserting any claim to parental rights; presumably his rights have been or are to be terminated voluntarily.

in the previous case occurred while the appellant was living with her parents and away from her then-husband. Those conditions included unsanitary and dangerous surroundings and neglect of illnesses.

An in-depth psychological evaluation of the appellant and her parents that was prepared in the earlier case concluded that the appellant's parents did not appreciate the deficiencies in the appellant's parenting of her (previously terminated) children, and that her parents contributed to and enabled those deficiencies. The appellant's mother, in her testimony before the circuit court in the instant case, disputed any need to make any changes or improvements in her or the appellant's parenting. The psychological report in the earlier case stated that "[t]here appears to be a significant basis for concern about ongoing neglect and abuse should the appellant return to that setting (the appellant's parents' home)." [4]

■ It is axiomatic that the fact that conditions of neglect or abuse have been found for one child, or that a parent has had their rights terminated with respect to one child, does not, standing alone, mean that such conditions necessarily exist for another child, or that a parent's rights to another child are to be automatically terminated. But such facts may be considered, and have considerable weight, in determining the issue of termination of a second child.

In *In Re Christina L. and Kenneth J. L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995), this Court reiterated that the fact of neglect or abuse of another child by a parent does not relieve the DHHR of its burden to show by clear and convincing evidence that a child who is the subject of a petition is neglected or abused—although the abuse or neglect of another child may be relevant evidence with respect to the condition of a child that is the subject of a petition. *Id.* 194 W.Va. at 452, 460 S.E.2d at 698.

■ Syllabus Points 3–5 of *In re George Glen B., Jr.*, 207 W.Va. 346, 532 S.E.2d 64 (2000), 207 W.Va. 346, 532 S.E.2d 64, state:

3. "Where there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998). Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) is present." Syllabus Point 2, *In re George Glen B., Jr.*, 205 W.Va. 435, 518 S.E.2d 863 (1999).

4. "When an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental rights to a sibling pursuant to West Virginia Code § 49-6-5b(a)(3) (1998), prior to the lower court's making any disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s)." Syllabus Point 4, *In re George Glen B., Jr.*, 205 W.Va. 435, 518 S.E.2d 863 (1999).

5. The presence of one of the factors outlined in *W.Va.Code*, 49-6-5b(a)(3) [1998] merely lowers the threshold of evidence necessary for the termination of parental rights. *W.Va.Code*, 49-6-5b(a)(3) [1998] does not mandate that a circuit court terminate parental rights merely upon the filing of a petition filed pursuant to the statute, and the Department of Health and Human Resources continues to bear the

---

**4.** Additionally, when the circuit court set the DHHR's petition for a preliminary hearing, on July 30, 2001, the appellant appeared in court and said she did not know the whereabouts of the child (this was apparently untrue). The appellant's mother testified that she did know the child's location, but that she would not tell the court; whereupon she was briefly held for contempt. The authorities soon located the child, who had been concealed at a relative's home.

burden of proving that the subject child is abused or neglected pursuant to *W.Va. Code,* 49–6–2 [1996].

■ In abuse and neglect cases, circuit courts have limited procedural discretion. For example, they *must* move cases quickly to decision, so that the rights and interests of children, parents, government officials, and other interested parties do not languish. This Court has not hesitated in overruling circuit courts when we perceived procedural errors—such as a court's refusal to consider the merits of a petition, or to hear certain evidence, or to move a case to a decision in a timely fashion, or to create a reasonably specific improvement period. *See, e.g., State v. Julie G.,* 201 W.Va. 764, 500 S.E.2d 877 (1997) (reversing a trial court's finding that there was no neglect and abuse because the court did not consider relevant evidence developed during an improvement period); *see also In re Edward B.,* 210 W.Va. 621, 558 S.E.2d 620 (2001) (reversing a trial court's termination of parental relationship because the court did not make findings and follow proper procedures).

On the other hand, as set forth in Part II. *supra,* of this opinion, a circuit court's substantive determinations in abuse and neglect cases on adjudicative and dispositional matters—such as whether neglect or abuse is proven, or whether termination is necessary—is entitled to substantial deference in the appellate context. *See, e.g., In re Jonathan G.,* 198 W.Va. 716, 482 S.E.2d 893 (1996) (upholding a decision by a circuit court to dismiss an abuse and neglect petition and reunify a child with a parent who acknowledged abuse, where the natural parents had cooperated with therapeutic intervention that was ultimately deemed beneficial); *see also State ex rel. Diva P. v. Kaufman,* 200 W.Va. 555, 490 S.E.2d 642 (1997) (trial court was not clearly erroneous in going against the wishes of the DHHR and the guardian *ad litem* by ordering an improvement period).

Applying the foregoing principles to the instant case, the record shows that the circuit court had ample evidence from which to conclude, using a clear and convincing standard, that the appellant—even with help from social service agencies and her parents—could not be reasonably expected to properly parent her child.[5]

■ We emphatically reiterate that a prior termination does *not* mean that a parent does not have the right to "another chance"—in the form of an improvement period or otherwise. To the contrary, regardless of past events, unless the evidence is clear and convincing to the effect that an improvement period would be pointless, our law requires that one must be ordered. But if a court, and it would be expected that this would be the rare case, determines based upon all of the evidence, including evidence from any prior abuse and neglect cases, and clearly enunciates in reasoned findings, that there is clear and convincing proof that conditions constituting abuse and neglect are present, and if the court clearly explains why it has concluded that an improvement period would be pointless, then the court *may,* in its discretion, decide not to grant such a period. That is what occurred in the instant case, and we conclude that the court acted within its discretion.

### IV.

For the foregoing reasons, we affirm the circuit court's decision.

Affirmed.

---

5. The appellant showed marginal interest in her child during visitations during the pendency of the proceedings.