# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**March 27, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: J.B.**

**No. 13-0728** (Greenbrier County 11-JA-37)

## MEMORANDUM DECISION

The petitioner father, William B. ("the father"), by counsel, Martha J. Fleshman, appeals from the June 5, 2013, order of the Circuit Court of Greenbrier County terminating his parental rights to his minor daughter, J.B.[1] The West Virginia Department of Health and Human Resources ("the Department"), by counsel, Angela Alexander Walters, filed a summary response in support of the circuit court's order. The guardian ad litem, S. Mason Preston,[2] filed a summary response on behalf of the child and in support of the circuit court's order. The father asserts several assignments of error in seeking a reversal of the order terminating his parental rights.

Upon our review of the parties' arguments, the pertinent authorities, and because we find no prejudicial error upon consideration of the applicable standard of review and the appendix record presented, this matter is proper for disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

On December 7, 2011, the Department filed a verified child abuse and neglect petition[3] against the father. The father stipulated there was probable cause of imminent

---

[1]Consistent with our practice in cases involving sensitive matters, we use the first name and last initial of the parent and the child victim's initials. *See State v. Edward Charles L.*, 183 W .Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990); *see also* W.Va. R. App. P. 40(e)(1).

[2]During the pendency of the instant appeal, Mr. Preston retired from the practice of law, and attorney Jeffrey S. Rodgers was appointed as J.B.'s guardian ad litem. Mr. Rogers appeared for oral argument before this Court.

[3]In addition to J.B., the Department alleged through its petition that her two half-siblings were also abused and neglected. Consequently, J.B.'s mother and the father of her half-siblings were also named as adult respondents in the petition. This Memorandum

(continued...)

1

danger at the time J.B. was taken into the Department's custody due to his failure to financially support her. The circuit court accepted the father's stipulation and, by order entered March 6, 2012, adjudicated J.B. abused and neglected. Thereafter, the circuit court granted the father's motion for a post-adjudicatory improvement period, which required, among other things, that the father: obtain and maintain employment; learn to demonstrate money management and an ability to separately provide an independent home and pay all necessary household bills; locate and maintain appropriate and independent housing;[4] and participate in random drug and alcohol screens. The circuit court also gave the Multi-Disciplinary Team ("MDT") the authority to grant unsupervised visitation "when agreed upon by the MDT." The MDT never gave the father unsupervised visitation.

During the father's various improvement periods spanning approximately fifteen months, including his alternative dispositional improvement period,[5] the Department's Child Protective Services ("CPS") worker Crystal Stock repeatedly reported concerns to the circuit court regarding the father's inconsistent participation in the random drug screens (two of which were positive) and his failure to secure an independent and suitable home. Ms. Stock also reported the Department's continuing concern that the father, who had never been a primary caretaker for J.B., would not be able to provide her with a safe and stable environment. While Ms. Stock acknowledged the love between the father and J.B., she also advised that the father remained "without a stable residence and without a consistent track record of demonstrating that he has overcome his past problems with addiction." In her social summary filed in anticipation of the May 2013 disposition hearing, Ms. Stock reported

---

[3](...continued)
Decision solely addresses the termination of the father William B.'s parental rights to J.B.

[4]The father was living in J.B.'s paternal grandfather's home.

[5]West Virginia Code § 49-6-5(c) (2009 & Supp. 2013) provides, in part, as follows:
     The court may, as an alternative disposition, allow the parents or custodians an improvement period not to exceed six months. . . . At the end of the period, the court shall hold a hearing to determine whether the conditions have been adequately improved and at the conclusion of the hearing shall make a further dispositional order in accordance with this section.

the father would likely seek a three-month extension of his alternative dispositional improvement period, but the Department

> cannot help but wonder what will change in three months that hasn't in seventeen [months].[6] The Department believes that every opportunity has been afforded to [the father] to demonstrate that he is prepared for the responsibility of providing a safe, stable, and nurturing environment[7] for his daughter[] [and] has . . . left the MDT members in total doubt about his ability to assume this responsibility. At this point in a case, there can be no room for such doubt. It is for this reason that the Department recommends that this matter proceed to disposition with a recommendation for the termination of [the father]'s parental rights to his daughter [J.B.]. (Footnotes added.).

During the May 28, 2013, disposition hearing, Ms. Stock expressed these same concerns. She also testified that it was several months into the instant proceeding before the Department learned that the father was participating in a Suboxone program, which meant he had an "opiate issue."[8] She explained the father did not want to have custody or be a placement option for J.B. at that time and, in fact, did not seek to be a placement option until after the mother's parental rights to J.B. were terminated in February 2013. Ms. Stock testified the father did not meet the Department's standards in terms of complying with the random drug screens, which essentially hindered the Department in evaluating whether he could "maintain a drug-free lifestyle." During this hearing, the family-based services provider echoed the problems with random drug testing, including difficulty in locating the father for the random tests. This provider further indicated that the father was not prepared to parent J.B. "24/7" without supervision. The father testified concerning his involvement in J.B.'s life and stated he did not want to "lose her." He acknowledged his past mistakes

---

[6]This is a reference to the length of time the matter had been pending.

[7]In early May 2013, the father advised the MDT that he had found a house to rent, but it needed renovations before the Department could conduct a home study. CPS worker Stock testified during the disposition hearing that the father had yet to advise the Department that it could evaluate this home. She also testified that during the time the father was living with J.B.'s paternal grandfather, he never contacted the Department to say "this is going to be my residence, come do a walk-through . . . ."

[8]The Suboxone program is a treatment program for methadone addiction. The father asserts that his failure to submit to the random drug screens was due to his mistaken belief that the drug screens in the Suboxone program were sufficient and, after being advised they were not, any other random screens he missed were for good reasons.

and recognized his failure to seek custody of J.B. earlier in the proceeding was "not the right move for [him] to make." The guardian ad litem advised the circuit court of J.B.'s need for stability, which the father had been unable to provide for her; the Department's counsel reiterated the substantial concerns of the parenting provider and CPS worker Stock.

By order entered June 5, 2013, the circuit court found that J.B. had been in foster care for fifteen of the last twenty-two months.[9] The court further found that the father had failed to comply with the terms of his improvement periods by failing to provide a stable home, to maintain contact with the Department and/or service providers, and to comply with random drug testing. The court also found that the MDT had been unable to recommend unsupervised visitation due to the father's lack of suitable housing. The court concluded that the father had not established a safe and secure home for J.B.; that her need for permanency, security, stability, and continuity was paramount; and that it was in her best interest to terminate the father's parental rights. The circuit court transferred J.B. to the Department's adoption unit.[10] This appeal followed.

We are asked to review a circuit court's order terminating parental rights. Our standard of review in this regard is well established:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[9]Although the father contends there is an issue as to whether relative placements are considered "foster care," we find the issue irrelevant to our decision in this matter for the reasons set forth herein.

[10]J.B.'s current guardian ad litem filed an update pursuant to Rule 11(j) of the Rules of Appellate Procedure in which he states that he has met with J.B. and she wishes to be adopted by her foster parents, who have already adopted her two half-siblings. At this time, J.B. has been living with her foster parents for approximately twenty-two months.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). As we explained in *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 490 S.E.2d 642 (1997), "the above standard of review requires deference by this Court to the findings of a circuit court in a civil abuse and neglect proceeding. The critical nature of unreviewable intangibles justify the deferential approach we accord findings by a circuit court." *Id.* at 562, 490 S.E.2d at 649. Indeed, "a circuit court's substantive determinations in abuse and neglect cases on adjudicative and dispositional matters—such as whether . . . termination is necessary—[are] entitled to substantial deference in the appellate context." *In re Rebecca K.C.*, 213 W.Va. 230, 235, 579 S.E.2d 718, 723 (2003) (internal citations omitted).

On appeal, the father asserts that the Department never investigated his home situation to determine whether he was a "reasonably available alternative" placement for J.B.; that his child support arrearage does not constitute abuse and neglect; that the circuit court erred in denying his motion for an extension of his alternative dispositional improvement period on the basis that J.B. had been in foster care for at least fifteen of the last twenty-two months;[11] that the circuit court erred in finding that he had failed to establish a safe and secure home for J.B.; that the Department never conducted a study of the paternal grandfather's home where he lived to see if it would be suitable for unsupervised visitation; and that the circuit court erred in finding that he had not complied with the terms and conditions of his improvement period by failing to report or remain in contact with the Department and/or service providers and failing to submit to random drug testing.

The appendix record and argument before us reflect that the father did not object to J.B.'s initial placement with her maternal grandmother[12] nor did he seek to be a placement option for J.B. until the mother's parental rights were terminated in February 2013. The record also reflects that the Department did not conduct a study of the paternal grandfather's

---

[11]West Virginia Code § 49-6-12(l) (Supp. 2013) provides, in part, that no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

[12]Although the father objected when J.B. was later placed for a period of time with his brother and sister-in-law, with whom he had an acrimonious relationship, such complaints are not a basis to reverse the termination of the father's parental rights.

home because the father never asked for one and, as the guardian ad litem explained in his summary response, the MDT never approved unsupervised visitation because it was "never convinced that [the father] could be a consistent parent to the point where unsupervised visits would be safe for J.B." The father's testimony at the May 2013 disposition hearing shows that he had not yet established a stable and independent home for J.B. as required by his improvement period.[13] The record further reflects that the father stipulated that there was probable cause of imminent danger at the time J.B. was taken into the Department's custody due to his failure to financially support her.[14] Moreover, the length of time J.B. had been in foster care was but one of several factors considered by the circuit court in denying the father's motion to extend his alternative dispositional improvement period and in terminating his parental rights.[15] Further, we do not find "compelling circumstances" that would have justified yet another extension of the father's improvement period.[16] Lastly, the appendix record supports the circuit court's finding regarding the father's noncompliance with the random drug screens.[17]

As we have previously explained,

[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether

---

[13]The father testified he had rented a home and had "almost moved in."

[14]While the Department could have sought to amend its petition once additional issues became apparent, it is clear from our review of the appendix record that the father was fully aware of the issues and problems he needed to resolve in order to avoid a termination of his parental rights to J.B. It is equally clear that he was given an extensive amount of time and services to aid him in resolving those issues during his multiple improvement periods, and he failed to do so.

[15]While West Virginia Code §49-6-5b(a)(1) (2009) requires the Department to seek termination where a child has been in foster care for fifteen of the most recent twenty-two months, here, there were multiple bases upon which the circuit court terminated the father's parental rights.

[16]*See supra* note 11.

[17]As the guardian ad litem stated in his summary response, "[a]fter [the father] failed his first random screen it was more a game of 'catch me if you can.' A number of excuses why he could not be tested just then."

sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

Syl. Pt. 6, *In Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). Indeed, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, No. 13-0342, 2014 WL 537757 (W.Va. Feb. 5, 2014). Furthermore, "'courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened . . . .' Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 4, in part, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873.

Here, the circuit court found the father had not met or complied with the terms of his improvement periods, which spanned some fifteen months. As indicated above, the father had "every opportunity to demonstrate that he [was] prepared for the responsibility of providing a safe, stable, and nurturing environment for his daughter[.]" Moreover, as J.B.'s guardian ad litem stated in his summary response, "after seventeen (17) months not one member of the MDT, except for [the father's] counsel, could with a clear conscious support returning J.B. to [the father,]" and termination was the only proper remedy. We agree.

Having considered the parties' arguments, the appendix record and, most importantly, J.B.'s best interests, and in giving substantial deference[18] to the circuit court's decision in this matter, we find no error in the Circuit Court of Greenbrier County's denial of the father's request for an extension of his alternative dispositional improvement period or in its termination of the father's parental rights to his child, J.B. Accordingly, the circuit court's order entered June 5, 2013, is hereby affirmed.

Affirmed.

**ISSUED:** March 27, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Margaret L. Workman
Justice Allen H. Loughry II

---

[18]*See supra In re Rebecca K.C.*, 213 W.Va. 230, 579 S.E.2d 718.