STATE OF WEST VIRGINIA

*In re*: A.L.

No. 17-0256 (Mercer County 15-JA-140-WS)

FILED

**September 5, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father W.L., by counsel Paul R. Cassell, appeals the Circuit Court of Mercer County's March 1, 2017, order terminating his parental, custodial, and guardianship rights to A.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Elizabeth A. French, filed a response on behalf of the child in support of the circuit court's order. The intervening foster parent, C.B., by counsel, Kyle G. Lusk, Matthew A. Bradford, and Brandon L. Gray, also filed a brief in support of the circuit court's order.[2] On appeal, petitioner argues that the circuit court erred in refusing to grant him a post-adjudicatory improvement period and in terminating his parental, custodial, and guardianship rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2015, petitioner's neighbor called the Child Abuse Hotline alleging that she could hear a child being hit at petitioner's residence. A child protective services ("CPS") worker arrived at petitioner's residence and observed welts and bruising on the child's face. The CPS worker also observed dried mud on the child's face, arms, and hands and that the child's clothes were soiled and dirty.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The intervenor's brief joins C.B.'s spouse, B.B., as an intervenor; however, the circuit court's October 4, 2016, order clearly grants only C.B. intervenor status below. Therefore, this Court will consider C.B. as the sole intervenor.

In September of 2015, the DHHR filed an abuse and neglect petition against petitioner asserting physical abuse upon the child. The petition asserted that the owner of the residence where petitioner, the child's mother, and the child resided disclosed to the CPS worker that the child frequently had unexplained injuries. The petition further asserted that petitioner stated that he was with the mother when she struck the child and that he agreed that the child needed to be punished for not listening to them. The petition asserted that petitioner stated, "that's what we do when we have to discipline him." The circuit court held a preliminary hearing and found reasonable cause to believe that the child was in imminent danger due to a nonaccidental trauma that was inflicted upon the child while in the custody of petitioner and the mother.

In October of 2015, the DHHR filed an amended petition which included information regarding prior abuse and neglect proceedings against petitioner in Michigan and South Dakota. The amended petition asserted that from 2007 through 2011, petitioner had his parental rights to six children terminated, two voluntarily and four involuntarily, in Michigan and South Dakota. The petition also asserted that petitioner is a registered sex offender.

In January of 2016, the circuit court held an adjudicatory hearing where petitioner stipulated to the abuse of the child based upon excessive corporal punishment. The circuit court accepted the stipulation and petitioner was adjudicated as an abusing parent. At the hearing, petitioner moved for a post-adjudicatory improvement period. The DHHR and the guardian opposed granting petitioner any improvement period. Shortly after the adjudicatory hearing, the DHHR moved to terminate petitioner's parental rights. The DHHR asserted that due to aggravated circumstances, the DHHR was not required to make reasonable efforts to preserve the family.

In March of 2016, the circuit court held a dispositional hearing during which it heard the testimony of the DHHR's caseworker in this matter. After the caseworker's testimony, the circuit court continued the hearing to allow for the completion of a home study of a relative in another state who wished to have the child placed with her.

In February of 2017, the circuit court resumed the dispositional hearing. Petitioner testified that, while living in Michigan, he had a prior improvement period concerning the subject child for nine months, but that the improvement period involved inappropriate housing, rather than corporal punishment. Petitioner further testified regarding his prior terminations in Michigan and South Dakota and stated that allegations of abuse and neglect were made in relation to all six of his other children, which resulted in termination of his parental rights to all of them.

Based on the evidence presented, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and terminated his parental, custodial, and guardianship rights to the child in its March 1, 2017, order.[3] It is from the dispositional order that petitioner appeals.

---

[3]Petitioner's and the mother's parental rights to the child were terminated below.
(continued . . .)

2

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's findings below.

On appeal, petitioner argues that the circuit court erred in denying him a post-adjudicatory improvement period. We disagree. Petitioner argues that the facts of this case do not support that this is the "rare case" where an improvement period would be "pointless." See *In re Rebecca K.C.* 213 W.Va. 230, 579 S.E.2d 718 (2013). Upon our review, the Court finds that petitioner misstates the standard used for granting an improvement period. The applicable burden for granting an improvement period is found at West Virginia Code § 49-4-610(2)(B), which requires that the parent "demonstrates by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . " Further, we have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 778 S.E.2d 338 (2015) (stating that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").

Here, petitioner testified that he would be willing to comply with an improvement period and make all reasonable efforts to be reunified with his child. However, he failed to present any evidence to demonstrate to the circuit court that he would be likely to fully participate in a post-adjudicatory improvement period. Although petitioner allegedly completed an improvement period involving this child in another state prior to the petition being filed in the abuse and neglect case at issue in this appeal, the circumstances surrounding the improvement period were not similar to the case at hand. Petitioner's prior improvement period involved inappropriate

---

According to the guardian and the DHHR, the child is in a foster home. The permanency plan is adoption. The foster parents wish to adopt the child, and a family member also wants to adopt the child. According to the parties, the circuit court will determine permanent placement at a scheduled permanency hearing.

housing, not corporal punishment. Further, between 2007 and 2011, petitioner's parental rights to six of his other children were terminated, four involuntarily and two voluntarily. Petitioner did receive services in Michigan during past proceedings, however, in 2009, the Probate Court for the County of Mecosta in Michigan found that petitioner did not benefit from the services. Based on this evidence, we find no error in the circuit court's refusal to grant petitioner's motion for a post-adjudicatory improvement period.

In furtherance of his argument that he should have received a post-adjudicatory improvement period, petitioner asserts that he did not have an opportunity to improve because he was not offered services by the DHHR. Pursuant to West Virginia Code § 49-4-604(a)(7)(C), the DHHR is not required to make reasonable efforts to preserve the family when aggravated circumstances, including prior involuntary terminations of parental rights, exist. Here, aggravated circumstances exist due to the prior involuntary terminations of petitioner's parental rights to six older children. Therefore, the circuit court did not err in finding that the DHHR did not need to make reasonable efforts to preserve the relationship between petitioner and the child.

Finally, petitioner argues that the circuit court erred in terminating his parental, custodial, and guardianship rights. We do not agree. We have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). As discussed above, petitioner's parental rights to six children were voluntarily and involuntarily terminated in Michigan and South Dakota between 2007 and 2011. In 2015, petitioner was granted an improvement period in the state of Michigan involving the subject child. Approximately eight months later, and after moving to West Virginia, the abuse and neglect petition at issue in this appeal was filed against him. Petitioner clearly did not remedy all the inappropriate conditions in the home during his prior abuse and neglect proceedings out of state. For these reasons, we find no error in the circuit court's termination of petitioner's parental, custodial, and guardianship rights.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 1, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: September 5, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

5