IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-698

_____

FILED

**November 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN RE: B.P.

_____

Appeal from the Circuit Court of Hampshire County
Honorable C. Carter Williams, Judge
Civil Action No. 21-JA-106

AFFIRMED

_____

Submitted: October 18, 2023
Filed: November 8, 2023

Grant M. Sherman, Esq.
Sherman Law Firm
Romney, West Virginia
Attorney for Petitioner G.F.

Julie A. Frazer, Esq.
Keaton, Frazer, Milleson, and Dante, PLLC
Romney, West Virginia
Guardian ad Litem

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Lee Niezgoda, Esq.
Assistant Attorney General
Fairmont, West Virginia
Attorneys for WV DHHR

JUSTICE HUTCHISON delivered the Opinion of the Court.
JUSTICE WOOTON dissents and reserves the right to file a dissenting opinion.

**SYLLABUS BY THE COURT**

1.      "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety."  Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."  Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W. Va. 138, 459 S.E.2d 415 (1995).

3.      A parent's absence from a child's life because of incarceration that results in the inability of the parent to provide necessary food, clothing, shelter, medical

i

care, education, or supervision is a form of neglect under the definition of "neglected child" set forth in West Virginia Code § 49-1-201 (2018).

4.      "A natural parent of an infant child does not forfeit his or her parental right to the custody of the child merely by reason of having been convicted of one or more charges of criminal offenses." Syl. Pt. 2, *State ex rel. Action v. Flowers*, 154 W. Va. 209, 174 S.E.2d 742 (1970).

5.      "When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity." Syl. Pt. 3, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

6.      """"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code, 49-6-5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code, 49-6-5(b) [1977] that

conditions of neglect or abuse can be substantially corrected.' Syllabus Point 2, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syllabus point 4, *In re Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989).' Syl. Pt. 1, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993)." Syl. Pt. 6, *In re Isaiah A.*, 228 W. Va. 176, 718 S.E.2d 775 (2010).

      7.     "'[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.' Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 4, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

**HUTCHISON, Justice:**

The petitioner, G.F.,[1] appeals the July 13, 2022, order of the Circuit Court of Hampshire County terminating his parental rights to his daughter, B.P. In this appeal, the petitioner contends that the circuit court erred by adjudicating him as an abusive and/or neglectful parent based on drug use because he was incarcerated at the time the respondent, the West Virginia Department of Health and Human Resources ("DHHR"), filed the abuse and neglect petition against him. Upon review of the parties' briefs and oral arguments, the submitted appendix record, and the pertinent authorities, we find that the circuit court did not base its adjudication of the petitioner on drug use, but instead, properly adjudicated the petitioner as a neglectful parent because of his failure to provide for B.P.'s basic needs due to his absence from her life as a result of his incarceration. Accordingly, we affirm the circuit court's order.

## I. Facts and Procedural Background

On November 18, 2021, three days after B.P. was born, the DHHR filed a petition alleging that her mother, T.P., had abused and/or neglected B.P. because both tested positive for methamphetamine at the time of the child's birth. When the petition was filed, paternity had not yet been established. The man initially identified by T.P. as

---

[1] In abuse and neglect cases, we use initials to identify the parties. *See* W. Va. R. App. Proc. 40(e); *see also In re L.W.*, 245 W. Va. 703, 706 n.1, 865 S.E.2d 105, 108 n.1 (2021).

B.P.'s potential father was excluded by a paternity test. The petitioner was not determined to be the father of B.P. until January 27, 2022. At that time, the petitioner was incarcerated in the Potomac Highlands Regional Jail having been convicted of two counts of possession with the intent to deliver a controlled substance, specifically methamphetamine, in violation of West Virginia Code § 60A-4-401(a)(i) (2020). The petitioner had pled guilty to these two felonies and was serving two terms of one to fifteen years in prison concurrently.[2] The petitioner had been incarcerated since September 2, 2021.

On March 1, 2022, the DHHR filed an amended petition alleging that the petitioner had abused and/or neglected B.P. The record reflects that the DHHR used the same petition it had filed against T.P., which included an allegation of abandonment with respect to the unknown father. The following allegations concerning the petitioner were added:

> On January 27, 2022, [G.F.] was determined to be the biological father of [B.P.]
>
> That [G.F.] was convicted of two counts of Possession with intent to Deliver a Controlled Substance: Methamphetamine December 1, 2021; and that [G.F.] was denied probation and sentenced to the penitentiary.
>
> Since the infant child's birth, [G.F.] has had no contact nor has he provided any financial support for the infant child.

---

[2] The petitioner also pled guilty to two misdemeanors, no proof of insurance and driving while license suspended, for which he received fines.

The petitioner's adjudicatory hearing was held on May 16, 2022.[3] At that hearing, the petitioner testified that he and T.P. "just knew the same people" and were never in a relationship. He further testified that he did not know that T.P. was a drug addict and was unaware that she had possibly given birth to his child until he was ordered to undergo paternity testing. On June 29, 2022, the circuit court entered an adjudicatory order in which it took judicial notice of the fact that the petitioner had been identified as the boyfriend of T.P in the prior abuse and neglect proceeding that concerned her five older children. The circuit court then found "that [G.F.'s] incarceration is due to his involvement in drugs" and "that [G.F.] has failed to emotionally and financially support his child." Thus, the circuit court adjudicated the petitioner as an abusive and/or neglectful parent.

The circuit court held the petitioner's disposition hearing on June 28, 2022. The DHHR presented evidence that the petitioner had declined to participate in services offered to him in prison. The petitioner testified that he refused the recommended services because it would require him to participate in a six-month program that could possibly delay his release. He testified that he hoped to be paroled in a couple of months, but acknowledged that if he was released, he had no home. He said he intended to seek admission into a halfway house program for twelve months. He further testified that he

---

[3] The petition filed against B.P.'s mother alleged "aggravated circumstances" pursuant to West Virginia Code § 49-4-605(a)(3) (2018) because her parental rights to her five older children had been terminated in a prior abuse and neglect proceeding. Consequently, by the time of the petitioner's adjudication, T.P.'s parental rights to B.P. had already been involuntarily terminated.

3

would need to obtain employment but admitted that transportation might be an issue because his driver's license had been suspended. The DHHR also presented testimony that indicated that B.P. was thriving in her foster home and had a close bond with her foster parents and her half-siblings who were residing with her.

The circuit court entered its dispositional order terminating the petitioner's parental rights on July 13, 2022. In that order, the circuit court found:

> [A]s we sit here today, [G.F.] remains incarcerated; however, [G.F.] testified that he plans to seek parole in September of 2022. This Court has no way of knowing whether or not [G.F.] will be granted parole in September 2022 or whether he will be required to serve the remainder of his sentence of not less than one (1) nor more than fifteen (15) years in the penitentiary of this state, and to delay permanency for the minor child, [B.P.], would be detrimental to her health, safety, and welfare.

The court further found that the petitioner had no plans in place to take care of or provide for B.P. in the event he was released from prison, and thus, there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. The circuit court determined that there were no less restrictive alternatives and that it was in B.P.'s best interests to terminate the petitioner's parental rights. Upon entry of the circuit court's order, the petitioner filed his appeal with this Court.

## II. Standard of Review

Our standard of review for abuse and neglect cases is well established:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). We have further explained that "a circuit court's substantive determinations in abuse and neglect cases on adjudicative and dispositional matters—such as whether neglect or abuse is proven, or whether termination is necessary—[are] entitled to substantial deference in the appellate context." *In re Rebecca K.C.,* 213 W. Va. 230, 235, 579 S.E.2d 718, 723 (2003). However, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W. Va. 138, 459 S.E.2d 415 (1995).

## III. Discussion

In this appeal, the petitioner challenges the termination of his parental rights based on what he contends was an improper adjudication by the circuit court for drug use.

5

The petitioner's argument is quite simple: he maintains there was no evidence to support the circuit court's adjudication because he could not have been using drugs at the time the abuse and neglect petition was filed against him as he had been incarcerated since September 2, 2021, which was more than two months before B.P. was born. In support of his argument, the petitioner relies upon syllabus point eight of *In re C.S. and B.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022), which provides:

> For a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an "abused child" or a "neglected child" as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an "abused child" or a "neglected child" must be based upon the conditions existing at the time of the filing of the abuse and neglect petition.

Upon review, we agree with the petitioner that our law clearly provides that an adjudication for abuse and/or neglect of a child must be premised upon conditions existing at the time the abuse and neglect petition is filed. *Id.; see also* W. Va. Code § 49-4-601(i) (2019). Nonetheless, we find no merit to the petitioner's argument that he was improperly adjudicated based upon alleged drug use. Rather, as set forth above, the circuit court's June 29, 2022, order indicates that the petitioner was adjudicated as a neglectful parent because he "ha[d] failed to emotionally and financially support his child." While the circuit court also made a finding in the order that the petitioner was incarcerated due to his involvement with drugs, it is clear he was adjudicated for neglecting B.P. because of his failure to provide for her most basic needs. While we have not directly addressed whether a parent's inability to provide for a child's basic needs due to incarceration can

6

support a finding that the parent has been neglectful, we indicated as much in *In re A.P.-1, A.P.-2, A.P.-3,* 241 W. Va. 688, 827 S.E.2d 830 (2019).

In *In re A.P.-1*, the petitioner father argued that the circuit court had erred in terminating his parental rights to his three children without first adjudicating him as an abusive and/or neglectful parent. The abuse and neglect petition filed by the DHHR in that case alleged that the petitioner had abused, neglected, and abandoned his children because he was imprisoned and serving a life with mercy sentence for first-degree murder with no parole eligibility until 2029. *Id.* at 690-91, 827 S.E.2d at 832-33. At the adjudicatory stage of the proceeding, the circuit court refused to find that the petitioner had abandoned his children because evidence at the adjudicatory hearing showed that the petitioner "remained involved in the children's lives through telephone conversations and cards, post-incarceration" and that he was providing for the children financially to the best of his ability despite being imprisoned. *Id.* at 691, 827 S.E.2d at 833. Even though the circuit court refused to make a finding of abuse and/or neglect, it proceeded to terminate the petitioner's parental rights at a subsequent hearing after determining that the children's best interests "control at disposition." *Id.* at 692, 827 S.E.2d at 834.

We reversed the circuit court's termination of the petitioner father's parental rights in *In re A.P.-1* because a circuit court lacks jurisdiction to proceed to the disposition phase in an abuse and neglect case absent a finding at the adjudicatory stage that the child(ren) have been abused and/or neglected. *Id.* at 693, 827 S.E.2d at 835; *see also* Syl.

7

Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983) ("In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va. Code, 49-6-5, it must hold a hearing under W.Va. Code, 49-6-2, and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case."). We also noted in *In re A.P.* that an abuse and neglect petition that included appropriate allegations could support "a finding at the adjudicatory stage that a parent's absence due to incarceration that harms or threatens the physical or mental health of the child is neglect." *Id.* at 695 n.29, 827 S.E.2d at 837 n.29. And, indeed we find that to be the case here.

West Virginia Code § 49-1-201 (2018) sets forth the definitions of words and terms related to abuse and neglect. Under that statute, "neglected child" is defined as a child:

> (A) Whose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian;

> (B) Who is presently without necessary food, clothing, shelter, medical care, education, or supervision because of the disappearance or absence of the child's parent or custodian[.]

8

W.Va. Code § 49-1-201. We find the definition of "neglected child" in subsection (B) to be particularly applicable when parents are absent from their children's lives as a result of incarceration. As Justice Workman elaborated in her separate opinion in *In re A.P.*,

> The[] statutory definitions of abandonment and neglect are part of a body of legislation that was enacted to protect the welfare of children. To that end, it is essential to remember that "effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, in part, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).
>
> In giving each of these statutory definitions effect so as to accomplish the critically important legislative purpose of protecting the welfare of children, *one is led to the inescapable conclusion that an incarcerated parent can be adjudicated as having abandoned his or her child[ren] through evidence of the parent's inability to meet even the most minimal parental duties and responsibilities to the child[ren]. Moreover, it is clear that the statutory definition of neglect encompasses not only abandonment, as defined by statute,[4] but also incarceration, so long as the factors surrounding that incarceration demonstrate that the parent is unable to provide the basic needs of his child[ren] as described in the neglect definition.*

241 W. Va. at 696-97, 827 S.E.2d at 838-39 (Workman, J., concurring, in part, dissenting, in part) (emphasis and footnote added). Accordingly, we now hold that a parent's absence from a child's life because of incarceration that results in the inability of the parent to provide necessary food, clothing, shelter, medical care, education, or supervision is a form

---

[4] "'Abandonment' means any conduct that demonstrates the settled purpose to forego the duties and parental responsibility to the child[.]" W. Va. Code § 49-1-201.

9

of neglect under the definition of "neglected child" set forth in West Virginia Code § 49-1-201.

While we have concluded that parents may be adjudicated as neglectful as a result of incarceration that prevents them from providing for their children's basic needs, we remain mindful that "[a] natural parent of an infant child does not forfeit his or her parental right to the custody of the child merely by reason of having been convicted of one or more charges of criminal offenses." Syl. Pt. 2, *State ex rel. Action v. Flowers*, 154 W. Va. 209, 174 S.E.2d 742 (1970). In recognition of a parent's natural right to custody of his or her child(ren), we have held:

> When no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

Syl. Pt. 3, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). In so holding, we explained:

> Because incarceration does not *automatically* result in termination of a person's parental rights does not mean it may not affect the decision regarding permanent placement of a child. The reasons underlying the incarceration as well as the terms and conditions of incarceration can vary greatly. In some cases, a parent who is incarcerated may under the

10

circumstances still be able to correct conditions of abuse and neglect "in the near future" through participation in an improvement period or otherwise. In other cases, incarceration may unreasonably delay the permanent placement of the child deemed abused or neglected, and the best interests of the child would be served by terminating the incarcerated person's parental rights. Thus while the mere fact that someone is incarcerated will not result in automatic termination of parental rights, the parental rights of an incarcerated person may be terminated.

*Id.* at 97, 717 S.E.2d at 881.

In *In re Cecil T.,* the father of the subject child was incarcerated after he "was arrested in his home for selling firearms to undercover agents in violation of federal law barring possession of firearms by a convicted felon." *Id.* at 93, 717 S.E.2d at 877. He was adjudicated as neglectful because his child was in the home at the time of his arrest and "[his] choices placed the child in a very risky situation." *Id.,* (additional quotations omitted). Accordingly, the father's incarceration in *In re Cecil T.* became an issue at disposition. Although *Cecil T.* was decided in the context of disposition, we find our holding in syllabus three of that case to be applicable in the context of adjudication as well. In that regard, there may be instances where an incarcerated parent is still able to provide for his or her child's minimum basic needs even though he or she is not physically present in the child's life. In such circumstances, a finding of neglect based on the parent's absence due to incarceration would not be warranted. Accordingly, "the *Cecil T. factors*, along with the statutory definitions for 'abandonment' and 'neglect' in West Virginia Code § 49-1-201, are all unquestioningly relevant to determining whether the Department has

11

established that the parent is abusing or neglecting, as required by West Virginia Code § 49-4-601[.]" *In re A.P.-1*, 241 W. Va. at 697, 827 S.E.2d at 839 (Workman, J., concurring, in part, dissenting, in part). In other words, a circuit court should consider the factors set forth in syllabus point of three *Cecil T.* along with the definition of "neglected child" in West Virginia Code § 49-1-201 in determining whether an incarcerated parent has been neglectful of his or her child(ren).

In this case, we find that circuit court appropriately considered all the factors surrounding the petitioner's incarceration in adjudicating the petitioner as a neglectful parent. At the time the petitioner was adjudicated, he was serving two concurrent sentences with a maximum term of fifteen years imprisonment for selling an illegal drug, notably the same drug for which his child tested positive at birth. During the adjudicatory hearing, the petitioner testified that he had no permanent home and that before he was incarcerated, he "just bounced around." He also indicated that he had no family in the area. Critically, the petitioner had made no attempt have any contact with his child or provide for her financially. The DHHR's child protective services worker testified that the petitioner had never reached out to see how B.P. "was getting along" or "to check on her welfare." Accordingly, we find that there was no clear error in the circuit court's adjudication of the

12

petitioner as neglectful because of his failure to support his child emotionally and financially.[5]

We further find that the circuit court did not clearly err in terminating the petitioner's parental rights. "As with all abuse and neglect proceedings, 'the best interests of the child is the polar star by which decisions must be made which affect children.' *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citation omitted)." *In re N.A.*, 227 W. Va. 458, 469, 711 S.E.2d 280, 291 (2011). When the petitioner's disposition hearing was held, he remained incarcerated serving a sentence with a maximum term of fifteen years. Although the petitioner testified that he thought he might be released in a couple of months, he had no plans in place to take care of B.P. as he intended to reside in a halfway house for twelve months. The petitioner's inability to provide for B.P.'s basic needs remained, and he had no prospects for correcting that situation in the event his release from prison was, in fact, imminent. Thus, the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future was not error. We have held:

> ""Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code, 49-6-5 [1977] may be

---

[5] While we have determined that the circuit court made the necessary findings to support its adjudication of the petitioner as neglectful, we feel compelled to address another finding the circuit court made in the adjudicatory order. The circuit court found that "the ultimate form of neglect is not even knowing that your child exists." Such a finding is not supported by the definition of "neglected child" set forth in West Virginia Code § 49-1-201 and it is also patently false.

13

employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code, 49-6-5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).' Syllabus point 4, *In re Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989)." Syl. Pt. 1, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

Syl. Pt. 6*, In re Isaiah A.*, 228 W. Va. 176, 718 S.E.2d 775 (2010). In addition,

"courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. B.P. was less than a year old and needed permanency, security, stability, and continuity. She was thriving in her current placement with her half-siblings. Thus, it was clearly in her best interests to terminate the petitioner's parental rights.

## IV. Conclusion

Accordingly, the July 13, 2022, order of the Circuit Court of Hampshire County terminating the petitioner's parental rights is affirmed.

Affirmed.

14