IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 21-0898

_____

FILED

**October 7, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* F.N., G.N., B.N., M.E., and K.E.

_____

Appeal from the Circuit Court of Doddridge County
Honorable Timothy L. Sweeney, Judge
Civil Action Nos. 20-JA-8 through 12

AFFIRMED

_____

Submitted: September 7, 2022
Filed: October 7, 2022

Jeremy B. Cooper, Esq.
Blackwater Law PLLC
Aspinwall, Pennsylvania
Attorney for Petitioner, L.N.


Dean R. Morgan, Esq.
Clarksburg, West Virginia
Guardian ad Litem for F.N, G.N., and B.N.


Michael D. Farnsworth, Jr., Esq.
Farnsworth Law Office PLLC
Parkersburg, West Virginia
Guardian ad Litem for M.E. and K.E.

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Lee Niezgoda, Esq.
Assistant Attorney General
Fairmont, West Virginia
Attorneys for WV DHHR


CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.
JUSTICE WOOTON dissents and reserves the right to file a dissenting opinion.

**SYLLABUS BY THE COURT**

1.    "'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)." Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

2.    "At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syl. Pt. 6, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

i

3. "In making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.,* 233 W. Va. 57, 754 S.E.2d 743 (2014).

4. "'Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected.' Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

**HUTCHISON, Chief Justice:**

The petitioner, L.N.,[1] appeals the October 4, 2021, order of the Circuit Court of Doddridge County terminating her parental rights to her five children, F.N., G.N., B.N., M.E., and K.E. In this appeal, the petitioner contends that the circuit court erred by terminating her rights based on a finding that she failed to satisfy a requirement that she claims was not part of the terms and conditions of her post-adjudicatory improvement period. Having considered the parties' briefs and oral arguments, the submitted appendix record, and pertinent authorities, we find no error and, therefore, affirm the circuit court's decision.

## I. Facts and Procedural Background

The respondent, the West Virginia Department of Health and Human Resources (hereinafter "DHHR"), filed an abuse and neglect petition against the petitioner on June 1, 2020, alleging that she was allowing her boyfriend, B.C., who is a registered sex offender,[2] to have contact with her children in violation of a domestic violence protective

---

[1] In cases involving sensitive facts, we use initials to identify the parties. *See* W.Va. R. App. Proc. 40(e); *see also State v. Edward Charles L.,* 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] B.C. was convicted of a sexually motivated battery in 2013 pursuant to an *Alford* plea for allegedly touching the breast of a sixteen-year-old female friend of his teenage daughter. *See State v. Lilly,* 194 W. Va. 595, 605 n. 2, 461 S.E.2d 101, 111 n. 2 (1995) (Cleckley, J., concurring) (explaining that an *Alford* plea allows a defendant to plead guilty to an offense yet continue to maintain his/her innocence). During the proceedings below,

1

order issued in Harrison County, West Virginia. According to the petitioner, she obtained the domestic violence protective order against R.N., the father of her three youngest children, after he hit her in the face while they were outside of their children's school. The petitioner claims that R.N. discovered that B.C. was on the sex offender registry list, and R.N.'s attorney was able to get a provision put in the protective order prohibiting B.C. from having any contact with the children.[3]

Upon the filing of the abuse and neglect petition, the three youngest children were removed from the petitioner's custody and placed with their paternal grandparents.[4] The petitioner's two oldest children remained in the custody of their non-offending father, C.E.[5] The petitioner waived her right to a preliminary hearing, and an adjudicatory hearing was scheduled for September 10, 2020.

---

B.C. claimed that although he is required to register as a sex offender for life, he is not restricted from being around children; he is not subject to extended supervision; and a private sex offender risk assessment, which he independently obtained, indicates that he is not a threat to children.

[3] The domestic violence protective order was not included in the appendix record submitted in this case.

[4] In the initial abuse and neglect petition, no allegations were made against R.N. However, at that time, he only had supervised visitation with his children pursuant to a family court order entered in the ongoing divorce proceeding between him and the petitioner. Subsequently, R.N. failed a drug test, and the DHHR amended the petition to allege that R.N. was using illicit drugs. R.N. was adjudicated as an abusive and neglectful parent and was granted a post-adjudicatory improvement period, which he successfully completed. F.N., G.N., and B.N. were then returned to his custody.

[5] The petitioner and C.E., her first husband, had a fifty-fifty custody agreement in place when the abuse and neglect petition was filed.

2

At the adjudicatory hearing, the petitioner stipulated to abusing and neglecting her children. According to the record, the petitioner entered the following stipulations:

> That the respondent mother [L.N.] admits that she allowed the children to be around [B.C.], who is a registered sex offender, before fully vetting him and understanding the scope of the criminal case against him, and allowed him to have contact and access to the above-named children;

> The Respondent Mother, [L.N.], admits that the contact that she previously allowed between her children and [B.C.] put the health, safety, and welfare of her children at risk which rose to the level of abuse and/or neglect;

> That based upon this stipulation, the above named children are abused and neglected with the meaning of West Virginia Code § 49-1-201 et seq.

Based upon these stipulations, the circuit court adjudicated the petitioner as an abusive and neglectful parent.[6] Following her adjudication, the petitioner was granted a post-adjudicatory improvement period by an order entered on October 8, 2020. The improvement period was extended by the circuit court on April 13, 2021.

During her improvement period, the petitioner was afforded twice weekly supervised visits with her three youngest children in her home. The two oldest children told the DHHR that they did not wish to have visitation with the petitioner. In addition to

---

[6] It was also alleged in the abuse and neglect petition that the petitioner was neglectful in the hygiene of her infant children. However, this allegation was not substantiated, and the only basis for the petitioner's adjudication was her stipulations regarding the children's contact with B.C.

3

providing for visitation, the petitioner's family case plan required her to participate in individualized therapy "to work on improving her boundaries regarding romantic relationships." As part of the case plan, the petitioner also agreed that

> [u]ntil further recommended by the MDT[7] or ordered by the court, [petitioner] is not to have the children around [B.C.] for any reason. Parent will notify worker if she becomes involved in a new relationship so that the MDT can assess the need for services to ensure the safety of her children. Parent will inform worker of any changes in residence/phone number within 48 hours. Parent will also notify this worker of anyone moving in or out of her residence.

(Footnote added).

At the end of the petitioner's improvement period, the DHHR and the guardians ad litem for the children sought termination of the petitioner's parental rights, contending that she had failed to make adequate progress in correcting the deficiencies that led to the filing of the abuse and neglect petition. The petitioner claimed, however, that she had ended her relationship with B.C. and asked the circuit court to return the children to her custody or grant her a dispositional improvement period. The parties convened for the disposition hearing on August 27, 2021.

---

[7] *See* W. Va. Code § 49-4-405 (2015) (establishing multidisciplinary treatment teams for abuse and neglect cases).

The evidence presented at the disposition hearing showed that at the beginning of her improvement period, the petitioner refused to participate in individualized therapy. She then reported that she had seen a therapist and was told that she did not need therapy. At eight months into her improvement period, the petitioner finally began participating in weekly therapy sessions. By the time of the disposition hearing, the petitioner had been receiving therapy for approximately six months.

With regard to B.C., the evidence showed that at the outset of the case, the petitioner denied having a relationship with him, claiming that he was just her employer. Later though, she acknowledged that they had an intimate relationship and indicated that she would like for it to continue. At the disposition hearing, the petitioner testified that she had been romantically involved with B.C. for most of the improvement period, but that she had finally realized the relationship could not continue and had ended all communication with B.C. within the last two weeks. However, she admitted to three happenstance encounters with him during the week before the disposition hearing.[8] When asked whether she understood why contact between her children and B.C. was concerning, the petitioner testified that she understood the opinions of the MDT members, but that she did not believe

---

[8] The petitioner testified that both she and B.C. had been at church the previous Sunday but had not sat together; that she had seen him at Walmart; and that he came to her house to tell her he had received a subpoena to appear at the disposition hearing, but that she told him to leave.

it was a problem for B.C. to be around children. The petitioner placed blame for B.C.'s conviction upon his victim and the legal system.

Following the disposition hearing, the circuit court determined that the petitioner had not successfully completed her improvement period and terminated her parental rights by the order entered on October 4, 2021. Specifically, the circuit court found that the petitioner had delayed complying with the therapy requirement of her family case plan and "given the denial and continued pursuit of a continuing relationship with her paramour [B.C.], until mere days before the disposition, there is no reasonable likelihood that the conditions of neglect and/or abuse can be substantially corrected in the near future or at all by the [petitioner]." Although the petitioner's parental rights were terminated, she was granted post-termination visitation with her children. Following entry of the dispositional order, the petitioner filed this appeal.

## II. Standard of Review

Our standard of review for abuse and neglect cases is well established.

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a

6

> reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). This Court has also explained that "a circuit court's substantive determinations in abuse and neglect cases on adjudicative and dispositional matters—such as whether neglect or abuse is proven, or whether termination is necessary—is entitled to substantial deference in the appellate context." *In re Rebecca K.C.,* 213 W. Va. 230, 235, 579 S.E.2d 718, 723 (2003). With this standard in mind, we consider the parties' arguments.

### III. Discussion

The petitioner's only assignment of error in this case is that the circuit court erred by terminating her parental rights based on its finding that she had continued to have a relationship with B.C. during her improvement period. The petitioner argues that there was no requirement in her family case plan that she "cut B.C. out of her life altogether" and, furthermore, the evidence showed that she ended the relationship before the disposition hearing. The petitioner maintains that she satisfied the requirements of her improvement period and there was no clear and convincing evidence to support the circuit court's finding that there was no reasonable likelihood of correcting the conditions of abuse and neglect in the near future.

7

Conversely, the DHHR contends that the petitioner's case plan made clear that the primary goal was for her to understand how her relationship with a registered sex offender affected the wellbeing of her children and that she never achieved that goal. The DHHR argues that the petitioner failed to remediate the danger posed to her children by B.C. as she testified at the disposition hearing that she had continued her relationship with him throughout most of the improvement period. In addition, the DHHR notes that the petitioner's case plan provided that individualized counseling was the essential service needed for her to address her poor choices in her relationships, and yet, she refused to accept her need for therapy for nearly eight months. The DHHR further asserts that there was no evidence that the petitioner made any meaningful progress or changes after she began therapy as she continued to have a relationship with B.C. and minimized the significance of his criminal conviction. In that regard, the DHHR highlights the petitioner's testimony at the disposition hearing where she stated that although she had ended her relationship with B.C., she did not believe him to be a threat to her children and excused his behavior, suggesting that the victim made a false accusation. The DHHR says that the petitioner's failure to improve the conditions of abuse and neglect was obvious based on her testimony at the disposition hearing, and, therefore, termination of her parental rights was proper.

Like the DHHR, the guardians ad litem for the children argue that the circuit court did not err by terminating the petitioner's parental rights. They contend that the petitioner made it quite clear in her testimony at the disposition hearing that despite months

8

of input from the court and the MDT, she did not believe that a relationship with B.C. posed a threat to her children. The guardians also assert that the petitioner gave less than compelling testimony that her relationship with B.C. ended just prior to the disposition hearing. They maintain that the petitioner did not act in the children's best interests and did not take the necessary steps to correct the deficiencies that led to the filing of the abuse and neglect petition.

We begin our analysis with the recognition that "[t]he assessment of the overall success of the improvement period lies within the discretion of the circuit court 'regardless of whether the individual has completed all suggestions or goals set forth in family case plans.' *In Interest of Carlita B.*, 185 W.Va. 613, 626, 408 S.E.2d 365, 378 (1991)." *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995). As syllabus point six of *Carlita B.* provides:

> At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child.

*Id.* at 615, 408 S.E.2d at 367. In making that determination,

> the overriding consideration must be whether the issues that brought about the allegations of abuse and/or neglect have been addressed by the parent in a substantive and effective manner, and whether those conditions of abuse and/or neglect have been sufficiently remedied such that it is in the child's best interests to be returned to the parent's custody.

*In re B.H.,* 233 W. Va. 57, 65, 754 S.E.2d 743, 751 (2014).

In this case, the circuit court found that petitioner had not successfully completed her improvement period because she had not complied with her counseling requirement and admitted to only recently ending her relationship with B.C. Regarding the petitioner's requirement to participate in therapy, the circuit court observed that

> the [petitioner] delayed participating in the therapy that was a term and condition of her improvement period, until almost eight (8) months into her improvement period. The [petitioner] asserted in her testimony and to the MDT that she does not need therapy and averred that the first therapist she saw told her that she did not need therapy.

As for the petitioner's relationship with B.C., the circuit court found that

> [d]espite the stipulation that she had failed to recognize the danger and properly vet [B.C.] and used poor judgment by allowing him to have any access to or contact with her children, the [petitioner] continued to engage in a romantic relationship with [B.C.] during her improvement period and was not forthcoming with the MDT or the Court about that relationship.
>
> \* \* \* \*
>
> [I]t was not until the matter was set for disposition and the hearing was imminent that the [petitioner] ended her romantic relationship with [B.C.], approximately eleven (11) months after the Improvement Period began. Additionally, she claims the action was taken as a result of an epiphany, rather than resulting from any therapy etc. casting further doubt upon the genuineness thereof.

The circuit court also found "the testimony of the [petitioner] with regard to [B.C.] and his fitness to be around the children to be contradictory and insincere," explaining:

The [petitioner] testified that she felt that [B.C.] was a safe adult to have around children and defended him by criticizing the legal system and blaming the victim. However, she also testified that he should not be allowed to be in positions of trust with the children. The Court further doubts her sincerity as to her commitment to ending her relationship with [B.C.] at the eleventh hour, when disposition was looming over her head. It is clear from her testimony that the [petitioner] acknowledges that the other parties believe [B.C.] to be an inappropriate person to have contact with her children, but that she herself does not believe he is a risk to the children.

Upon review, we are unable to find that the circuit court abused its discretion when it determined that the petitioner failed to satisfy the requirements of her improvement period. The sole focus of the proceedings below was petitioner's relationship with B.C. and the threat it posed to her children. Indeed, the only basis for petitioner's adjudication as an abusive and neglectful parent was her stipulation that "the contact that she previously allowed between her children and [B.C.] put the health, welfare, and safety of her children at risk which rose to the level of abuse and neglect." Contrary to petitioner's contention, it is evident from her case plan that she was expected to end her relationship with B.C. as she agreed to notify the DHHR "if she becomes involved in a new relationship so that the MDT can assess the need for services to ensure the safety of her children." Furthermore, the petitioner's relationship with B.C. was not the only reason the circuit court determined that she was unsuccessful in satisfying the requirements of her improvement period. As discussed above, the petitioner's case plan required her to participate in individualized therapy, and the circuit court found that she failed to fully comply with her counseling requirement.

11

The circuit court ultimately concluded that the petitioner "ha[d] not meaningfully participated in therapy or taken other necessary measures to remediate the issues giving rise to the petition, despite the passage of nearly eleven months" and that "[i]t would be contrary to the welfare of the infant children to continue to delay permanency any longer, to attempt to convince the [petitioner] against her will." We have previously observed that

> [u]nlike an abuse and neglect proceeding that involves a dirty home or a parent abusing drugs, where a parent's success in an improvement period can be measured in concrete terms of whether the home is clean or the parent's drug screens are negative, [in these types of cases], the circuit court ha[s] to assess whether the mother ha[s] internalized what the service providers endeavored to teach her during her improvement period and whether she would, in fact, protect her children by avoiding relationships with individuals in whose presence her children were placed at risk of abuse.

*In re B.H.,* 233 W. Va. at 66, 754 S.E.2d at 752. In this instance, the circuit court considered the petitioner's inconsistent testimony regarding whether she believed B.C. should be permitted to have contact with her children and her minimization of his conviction in assessing the petitioner's success during her improvement period. The circuit court concluded that the petitioner had not remediated the conditions of the abuse and neglect and was unlikely to do so in the near future, despite her claim that she had finally realized that she could not continue to have a relationship with B.C. The court explained that "given [petitioner's] failure to be forthcoming about the nature of the relationship [with B.C.] during these proceedings, the Court has cause to doubt her veracity and sincerity." We do not disturb such credibility determinations on appeal because "[a] reviewing court cannot

12

assess witness credibility through a record.  The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.,* 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

Critically, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." *In re B.H.,* 233 W. Va. at 59, 754 S.E.2d at 745, syl. pt. 4.  In other words, "[t]he question at the disposition phase of a child abuse and neglect proceeding is not simply whether the parent has successfully completed his or her assigned tasks during the improvement period.  Rather, the pivotal question is what disposition is consistent with the best interests of the child." *In re Francis J.A.S.*, 213 W. Va. 636, 646, 584 S.E.2d 492, 502 (2003).  To that end,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).  Under West Virginia Code § 49-4-604(d) (2020), "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" is defined as "based upon the evidence before the court, the

13

abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Such conditions exist when "[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[.]" W. Va. Code § 49-4-604(d)(3).

In this case, the circuit court found that even though the petitioner eventually complied with her therapy requirement, she still failed to recognize the danger posed to her children by contact with B.C. and her testimony at the disposition hearing confirmed that she did not have the capacity to do so in the near future such that it was in the children's best interests to terminate her parental rights. Having carefully reviewed the record, we find there is sufficient evidence to support the circuit court's determination. Accordingly, we affirm the circuit court's termination of the petitioner's parental rights.

In affirming the circuit court's order, we also uphold the circuit court's decision to afford the petitioner post-termination visitation with her children. As this Court has held:

> When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity

14

to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995). "This Court's holding in *Christina L.* was a simple recognition that 'even where termination of parental rights is justified, a continued relationship between parent and child by means of post-termination visitation may be valuable to the child's emotional well-being.' *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 260, 470 S.E.2d 205, 214 (1996) (citation omitted)." *In re Alyssa W.*, 217 W. Va. 707, 711, 619 S.E.2d 220, 224 (2005).

In this case, there was ample evidence of a close emotional bond between the petitioner and her three youngest children to support the circuit court's finding that it was in the children's best interests to grant the petitioner post-termination visitation with them. In that regard, the Child Protective Services reports in the record show that the petitioner's three youngest children were overjoyed to see their mother during her improvement period and did not want their visits with her to end. Notably, however, the Rule 11(j) update[9] filed with this Court by the petitioner indicates that she has reached out to the children's fathers, and to date, her efforts to have visitation with her children "have been rebuffed." While the post-termination visitation was granted at the discretion of the custodial fathers, their refusal to permit any visitation does not comply with the circuit court's order, which

---

[9] *See* W. Va. R. App. Proc. 11(j) (providing that parties in abuse and neglect appeals shall provide an update regarding current status of child(ren) within one week of oral argument or any other time as specified by order).

15

found that it was in the children's best interests to have continued visitation with their mother.

## IV. Conclusion

For the reasons set forth above, the circuit court's October 4, 2021, order is affirmed.

Affirmed.